**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

LINDA K. WATERS,          )
                                       )
          Plaintiff,    )
                                       )
v.                       )    Case No. CIV-17-015-RAW-KEW
                                     )
NANCY A. BERRYHILL, Acting   )
Commissioner of Social      )
Security Administration,    )
                                     )
          Defendant.   )

### REPORT AND RECOMMENDATION

Plaintiff Linda K. Waters ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's applications for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."   42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:   first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).   The term "substantial

---

[1]   Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 44 years old at the time of the ALJ's decision. Claimant obtained her GED.  Claimant has worked in the past as a kennel owner and greenhouse owner.  Claimant alleges an inability to work beginning May 1, 2012 due to limitations caused by bulging discs, migraine headaches, arthritis, and nausea.

## Procedural History

On October 24, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act.  Claimant's application was

denied initially and upon reconsideration. On August 10, 2015, a hearing was held before Administrative Law Judge ("ALJ") David Engel in Tulsa, Oklahoma. By decision dated September 21, 2015, the ALJ found that Claimant was not disabled during the relevant period and denied Claimant's request for benefits. On November 18, 2016, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to perform a proper credibility determination; and (2) failing to reach a supported RFC.

### Credibility Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of fibromyalgia, osteoarthritis, and bone spurs. (Tr. 14). He concluded Claimant retained the RFC to perform a full range of light work. In so doing, the ALJ found Claimant was

"limited to light and sedentary exertion work" with respect to lifting, carrying, pushing, and pulling.  He also determined Claimant could walk/stand up to two hours (combined total) in an eight hour workday with regular work breaks.  Claimant was able to sit for six hours (combined total) in an eight hour workday with regular work breaks.  Claimant was found to be able to climb ramps or stairs only occasionally and bend, stoop, crouch, and crawl not more than occasionally.  She could not climb ropes, ladders, and scaffolds and could not work in environments where she would have to be exposed to unprotected heights and dangerous moving machinery parts.  Claimant was unable to perform tasks requiring overhead reaching more than occasionally and was unable to perform tasks requiring the use of foot pedals more than occasionally.  Claimant was able to understand, remember, and carry out simple instructions in a work-related setting and to interact with co-workers and supervisors under routine supervision.  (Tr. 14-15).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of document preparer, addresser, and ticket checker, all of which existed in sufficient numbers in the national and regional economies.  (Tr. 20).  As a result, the ALJ determined Claimant had not been under a disability from May 1, 2012 through the date of the decision. Id.

Claimant testified that she had been diagnosed with a severe case of osteoarthritis, arthritis, and a severe case of fibromyalgia. (Tr. 34-35). Claimant attempted to take the medication for fibromyagia but could not because of its side effects. (Tr. 35). Claimant drives about three times a week, usually to go to the grocery store and to church. (Tr. 38). Claimant has occasional dizzy spells during the day, lasting a few seconds. She also has problems with balance. (Tr. 39).

Claimant is married and has a 19 year old daughter living with her and attending college. (Tr. 40). She ran a English bulldog breeding business but downsized it when she could no longer work because her back was out of place and she suffered pain. (Tr. 41). Claimant went to a chiropractor but continued to experience shooting pain all the way through her back and up in her shoulders. She went to see the chiropractor for several weeks until her doctor advised her she had arthritis. Claimant went to an arthritis specialist and she suffered from symptoms of rheumatoid arthritis. The medication prescribed for her made her sick. (Tr. 42). Ultimately, Claimant stated she was diagnosed with osteoarthritis. She suffered extreme pain that would not go away. Her doctor diagnosed her with fibromyalgia after touching her various places and asking if she felt pain. (Tr. 43).

Claimant also testified that she was taking hydrocodone for

pain in her back.  (Tr. 46).  The pain "comes and goes" but she takes hydrocodone every day for the last three years or she "cannot move."  She is also on a muscle relaxer.  (Tr. 47-48).  Her doctor prescribed medication for fibromyalgia but she couldn't take it due to side effects.  He also told her that there was no medication for osteoarthritis.  (Tr. 48).

Claimant also takes medication for nausea. (Tr. 49).  She attributes the nausea to her fibromyalgia.  (Tr. 50).  Claimant testified she has trouble concentrating for long periods of time. She does laundry, cooking, and cleaning around the house.  She does not always get things done.  (Tr. 51).

When Claimant stands, she takes breaks.  She sits with a heating pad on her back or lays down on the couch.  She believes that she can only comfortably stand for 15 minutes at a time.  (Tr. 52).  Sitting at the hearing, Claimant stated that her lower and middle back hurt.  Fumes and dust makes her nauseous.  (Tr. 53). Claimant also suffers from migraine headaches about twice per week. She takes Sumatriptan for the condition and it usually gets rid of the headaches after an hour or hour and a half.  (Tr. 54-55). Claimant's husband drove her to the hearing because driving hurts her back.  She usually only goes to church on Sunday mornings with her husband and doesn't typically do things with friends and family.  (Tr. 56).  She misses church about twice a month due to

back pain.  (Tr. 57).  She experiences "bad days" eight or nine days out of a month.  (Tr. 58).

The ALJ found Claimant's testimony as to the limiting effects of her conditions to be "not entirely credible."  (Tr. 16).  He cited to the objective medical evidence such as an MRI in September of 2013 which revealed a small disc protrusion with no significant compromise of the spinal canal.  (Tr. 16, 498).  An arthritis examination from the same time period showed no synovitis or joint deformity with a well-preserved joint range of motion and neurologically intact.  Her gait was within normal limits despite some decreased range of motion of the lumbar spine.  (Tr. 16, 387, 389).  The ALJ also referenced the first diagnosis of fibromyalgia in February of 2014 but that no trigger point testing was present. He also stated that the treating physician left the form unfilled for fibromyalgia.  (Tr. 16, 469, 625).  Claimant also reported her pain well-controlled in April of 2015.  (Tr. 16-17).

The ALJ also considered Claimant's activities of daily living, finding her alleged limitations inconsistent with her reported activities, such as household chores, riding in a car, driving a car, and shopping.  He also was critical of the statement that she could only walk for 30 feet before she had to rest.  (Tr. 17).

The objective opinion evidence from the state agency physicians indicated Claimant could perform medium work.  (Tr. 91-

92).  The ALJ also acknowledged that Claimant received no treatment
for a mental impairment.  (Tr. 17).  He also recognized that the
treating physicians' source statements were inconsistent with the
treatment record after evaluating the opinions under the
appropriate standard.  (Tr. 18).

It is well-established that "findings as to credibility should
be closely and affirmatively linked to substantial evidence and not
just a conclusion in the guise of findings." Kepler v. Chater, 68
F.3d 387, 391 (10th Cir. 1995).  "Credibility determinations are
peculiarly in the province of the finder of fact" and, as such,
will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility
include (1) the individual's daily activities; (2) the location,
duration, frequency, and intensity of the individual's pain or
other symptoms; (3) factors that precipitate and aggravate the
symptoms; (4) the type, dosage, effectiveness, and side effects of
any medication the individual takes or has taken to alleviate pain
or other symptoms; (5) treatment, other than medication, the
individual receives or has received for relief of pain or other
symptoms; (6) any measures other than treatment the individual uses
or has used to relieve pain or other symptoms (e.g., lying flat on
his or her back, standing for 15 to 20 minutes every hour, or
sleeping on a board); and (7) any other factors concerning the

individual's functional limitations and restrictions due to pain or
other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.  It must
be noted that the ALJ is not required to engage in a "formalistic
factor-by-factor recitation of the evidence." Qualls v. Apfel, 206
F.3d 1368, 1372 (10th Cir. 2000).  The ALJ's detailed analysis of
the medical evidence, the inconsistencies in Claimant's statements,
and the extent of Claimant's activities gave support for the ALJ's
credibility findings.  This Court finds no error in the analysis.

### RFC Determination

Claimant also asserts that the ALJ failed to reach a proper
RFC which contained all of her limitations.  Primarily, Claimant
contends the ALJ should have given the medical source statements of
Dr. Adam Sewell and Dr. Wanda McMichael more weight.  Dr. McMichael
found Claimant could only sit for 30 minutes at one time and two to
three hours in a workday, stand/walk for 15 minutes at one time and
two hours in a workday, and occasionally lift/carry up to five
pounds.  She also found Claimant could not reach with either hand
or push/pull.  She opined that Claimant would constantly have poor
concentration because of her conditions. (Tr. 627).  Dr. McMichael
also estimated Claimant would be absent more than four days per
month and would need to elevate her feet periodically, have side
effects from medications, need a sit/stand/walk option at will, and
need to recline or lie down during the workday.  (Tr. 628).

Dr. Sewell's statement is somewhat less restrictive. He found Claimant could sit for two hours at one time and but three and a half hours in a workday, stand/walk for two hours at one time and two and a half hours in a workday, and occasionally lift/carry up to five pounds. He found Claimant was not restricted in hand or foot use. He also found that Claimant would constantly have poor concentration because of her conditions. (Tr. 630). Dr. Sewell estimated Claimant would be absent more than four days per month and would need to elevate her feet periodically, have side effects from medications, need a sit/stand/walk option at will, and need to recline or lie down during the workday. (Tr. 631).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material

inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence. His conclusion that the extreme limitations found by Drs. McMichael and Sewell lacked medical support was appropriate given the record before this Court.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of January, 2018.


_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE